**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| IN RE: EVOLVE BANK & TRUST CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 2:24-md-03127-SHL-cgc |
| | Judge Sheryl H. Lipman |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL, FEES, EXPENSES, AND SERVICE AWARDS

Plaintiffs, by and through interim class counsel, hereby submit this memorandum in support of their motion for final approval, fees, expenses, and service awards. As presented below, Plaintiffs move the Court for an order (1) affirming its appointment of Class Counsel, (2) affirming its appointment of Class Representatives, (3) affirming its conditional certification of the Class for the purposes of Settlement only, (4) holding that the notice program complied with due process requirements, and (5) holding that the Settlement is fair, reasonable, and adequate.

Under Federal Rule of Civil Procedure 23, Plaintiffs respectfully submit this Unopposed Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards, supported by a Declaration of Class Counsel ("Stranch Decl."), attached as Exhibit A, and the Declaration of Frank Ballard of Kroll Settlement Administration ("Admin. Decl."), attached as Exhibit B. The Court should enter the Final Approval Order (1) granting Final Approval of the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Rule 23(a) and (b)(3); (3) confirming Plaintiffs' appointment as Class Representatives; (4) confirming the appointment of Class Counsel; (5) confirming the appointment of Kroll Settlement Administration LLC ("Kroll") as Settlement Administrator; (6) awarding Class Counsel $3,952,753.33 for attorneys' fees and costs; (7) awarding each Class Representative a $2,500.00 Service Award; (8) overruling timely objections, if any; and (9) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation.

## I.    Introduction

On May 30, 2025, this Court preliminarily approved the Settlement. [ECF No. 79]. The Settlement provides substantial Settlement Class Member Benefits for 17,880,046 individuals via

a non-reversionary, all-cash Settlement Fund of $11,858,259.98, from which Settlement Class Members may elect to receive Cash Payments and/or Credit Monitoring. [ECF No. 69-1 ("S.A.") ¶ 73].[1] The Settlement Fund will also be used to pay Settlement Administration Costs, Court-awarded Service Awards, and Court-awarded attorneys' fees and costs. *Id.* Plaintiffs strongly believe the Settlement is favorable to the Settlement Class. Plaintiffs now move the Court for Final Approval and apply for an award of attorneys' fees and costs to Class Counsel and Service Awards to the Class Representatives. The Settlement satisfies all Final Approval criteria. Currently, there are three (3) total objections to the Settlement and 21 opt-outs from the Settlement Class. Admin. Decl. ¶ 20.

## II. Background

In February and May 2024, cybercriminals gained unauthorized access to Defendant's information systems and accessed and exfiltrated the Private Information, including those belonging to Defendant's personal banking customers and Evolve FinTechs' customers. S.A. ¶ 2. After the announcement of the Data Incident, multiple putative class action lawsuits were filed against Defendant and Evolve FinTechs, alleging that Defendant failed to properly protect the Private Information in accordance with its duties, had inadequate data security, was unjustly enriched by the use of the Private Information, and improperly or inadequately notified potentially impacted individuals. *Id.* ¶ 3. On or about July 1, 2024, Defendant began notifying individuals that their Private Information may have been compromised in the Data Incident. *Id.* ¶ 4. On October 4, 2024, the JPML created an MDL docket for actions related to the Data Incident and transferred 22 putative class action lawsuits to the Honorable Sheryl Lipman of the U.S. District Court for the Western District of Tennessee for coordinated or consolidated pre-trial proceedings. [ECF No. 1]. Between October 16, 2024, and November 13, 2024, the JMPL conditionally transferred 12 additional putative class actions related to the Data Incident. [ECF Nos. 3, 18, 25, 26].

On November 26, 2024, the Court appointed J. Gerard Stranch, IV of Stranch, Jennings &

---

[1] All capitalized terms not defined herein are defined in the Settlement Agreement.

Garvey, PLLC as MDL Lead Counsel and authorized Mr. Stranch to litigate all pre-trial proceedings and to conduct settlement negotiations on behalf of Plaintiffs and absent putative class members that now compromise the Settlement Class. [ECF No. 46]. On January 21, 2025, MDL Lead Counsel filed a Consolidated Class Action Complaint alleging claims for: negligence and negligence per se, breach of third-party beneficiary contract, unjust enrichment, as well as claims under California's Unfair Competition Law, California Consumer Records Act, the California Consumer Privacy Act, and for injunctive relief on behalf of a California subclass. [ECF No. 53].

Following the appointment of MDL Lead Counsel, in an effort to conserve resources for the Settlement Class as opposed to spending time and resources litigating the Action, the Parties' Counsel explored the early resolution of the Action, which culminated in the Parties participating in a mediation session conducted on January 31, 2025, with the Honorable Diane M. Welsh (Ret.), a retired federal magistrate judge now with JAMS in Philadelphia, Pennsylvania. S.A. ¶ 9. In preparation for and following the mediation, the Parties met on numerous occasions and exchanged extensive confidential information related to the Data Incident that allowed the Parties to assess the case and meaningfully engage in-arm's length settlement discussions. *Id.* ¶ 10. The mediation was successful, and the Parties reached agreement regarding the material terms of a classwide settlement, which if approved by the Court, will resolve all claims against Defendant in the Action as well as any Evolve FinTechs whose customer data was impacted. *Id.* ¶ 11.

Thereafter, the Parties negotiated and drafted the Agreement, and Plaintiffs filed their Motion for Preliminary Approval on April 1, 2025, which the Court granted. [ECF No. 69, 70, 79]. Since the Court entered the Preliminary Approval Order, the Parties have worked with the Settlement Administrator to implement the Notice Program and the Claim Process. Notice has been completed, and the Claim Form Deadline is October 30, 2025. Admin. Decl. ¶ 16, 19.

### III.    Summary of the Settlement

Plaintiffs seek Final Approval for the Settlement Class comprising of "all persons in the United States who provided their Private Information to Evolve, directly or indirectly, and whose Private Information was included in files affected by the Data Incident." S.A. ¶ 67. Excluded from

the Settlement Class are (a) all persons who are current and prior governing board members of Defendant; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff. *Id.* With the aid of a neutral and experienced mediator, the Parties agree to settle this class action on the below terms.

The non-reversionary all-cash $11,858,259.98 Settlement Fund will be used to pay (1) Cash Payments and Credit Monitoring; (2) all Settlement Administration Costs; (3) any Court-approved Service Awards to Class Representatives; and (4) any Court-awarded attorneys' fees and costs to Class Counsel. *Id.* ¶ 73. All Settlement Class Members may elect either Cash Payment A – Documented Losses or Cash Payment B – Flat Cash. *Id.* ¶ 77. All Cash Payments will be subject to a *pro rata* increase or decrease from the Net Settlement Fund depending on the value of all Valid Claims. *Id.* Settlement Class Members may submit Claims for up to $3,000.00 per Settlement Class Member upon presentment of reasonable documented losses related to the Data Incident. To do so, Settlement Class Members must elect Cash Payment A on the Claim Form, attesting under penalty of perjury that they incurred documented losses, and submit reasonable documentation of those losses. *Id.* ¶ 77.a. As an alternative to Cash Payment A – Documented Losses, Settlement Class Members may elect to receive Cash Payment B – Flat Cash, which is a fixed cash payment in the estimated amount of $20.00. *Id*. ¶ 77.b. In addition to Cash Payments, all Settlement Class Members may also make a Claim for one year of monitoring that will provide the following benefits: credit monitoring, real-time alerts, and insurance coverage for up to $1,000,000 for identity theft. *Id.* ¶ 77.c. The Credit Monitoring has an approximate value of $110.00 per year per Settlement Class Member. *Id.*

All Settlement Class Cash Payments will be subject to a *pro rata* increase from the Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. *Id.* ¶ 78. If the amount of Valid Claims exhausts the Net Settlement Fund, Cash Payments may be reduced *pro rata* accordingly. *Id*. To calculate the *pro rata* increase or decrease, the Settlement Administrator must distribute the Net Settlement Fund first for the payment of Credit Monitoring and then for Cash Payments. *Id*. Any *pro rata* adjustment will be on an equal

percentage basis. *Id.* In the unexpected event the Credit Monitoring value on its own exhausts the Settlement Fund, the length of the Credit Monitoring provided will be reduced as necessary to bring the cost within the Settlement Fund. *Id.*

Moreover, Defendant agrees to engage in certain practices to further secure its systems, including "eliminating plain text Social Security number storage practices, increasing visibility of environmental monitoring, confirming conditional access configurations, further hardening of firewall and dynamic security appliances, deploying endpoint detection and response and other security tools to harden the network, and enhancing its existing cybersecurity awareness training programs." *Id.* ¶ 79.

### 1. *Service Awards and Attorneys' Fees and Costs*

The Settlement Fund will also be used to pay Class Counsel's Court-awarded attorneys' fees and costs and reasonable Service Awards for the Class Representatives. *Id.* ¶ 73. Subject to Court approval, the Agreement provides for $2,500.00 Service Awards for each of the Class Representatives from the Settlement Fund. S.A. ¶ 111. Class Counsel seek an attorneys' fees award not to exceed one-third of the Settlement Fund, totaling $3,952,753.32. S.A. ¶ 112; Stranch Decl. ¶ 14. Class Counsel negotiated attorneys' fees, costs, and Service Awards as part of the total Settlement Class Member Benefits only after agreeing to the Settlement's material terms. S.A. ¶ 113. This Settlement is not contingent on approval of the requested fees or Service Awards. *Id.*

### i. **The Notice Program Comports with Due Process**

Before final approval can be granted, Due Process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation omitted). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the

settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007).

Due Process does not require that every class member receive actual notice. Rather, a notice plan is reasonable if it reaches at least 70% of the class. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (holding that notice was "the best notice practicable" where mail and publication notice reached 81.8% of the class). The notice here meets this standard, as it provided direct notice to 85.26% of the Settlement Class. Admin. Decl. ¶ 15.

Indeed, the Court approved the proposed Notice Program, finding it met the requirements of Rule 23 and Due Process. ECF No. 79. It has now been fully carried out by the Settlement Administrator, Kroll. Defendant provided Kroll with a data file containing 18,236,595 Class Member records, which Kroll then deduplicated to a final tally of 17,880,046 individuals. Admin. Decl. ¶ 7. Of those, 302,404 included invalid email addresses, and 350,922 did not contain an email address at all. *Id.* So, Kroll mailed notice via email notices to 17,199,877 Class Members on June 25, 2025. *Id.* ¶ 7, 9. A total of 1,955,499 emails were rejected as undeliverable. *Id.* ¶ 9. To ensure proper notice, Kroll then sent a reminder notice on August 4, 2025. *Id.* ¶ 10. Moreover, Kroll implemented an online media campaign "comprised of online display banner ads, social media ads, and search ads," which commenced on September 1, 2025, and will continue through October 15, 2025. *Id.* ¶ 11. These ads are running on Facebook, Instagram, Threads, LinkedIn, and Reddit. *Id.* ¶ 12. Given these efforts, including the media campaign, Kroll believes the combined notice reach is over 90%. *Id.* ¶ 15.

Further, the language in the Email Notices was clear and concise and directed Class Members to the Settlement Website for more information. *Id.* Ex. E. The material information

regarding the Settlement was also published to the Settlement Website, including the Complaint, Settlement Agreement, Preliminary Approval Order, Long Form Notice, and Claim Form. *Id.* ¶ 8. The Settlement Website, moreover, provided Settlement Class Members with the ability to submit a claim online, as well as to view the important dates remaining and answers to some frequently asked questions. *Id.* Further, Kroll established a toll-free help line through which callers could obtain additional information about the Settlement. *Id.* ¶ 5.

Class Members have until October 30, 2025, to submit a claim. Moreover, Class Members have until October 15, 2025, to either object to the terms of the Settlement or to exclude themselves from participation in the Settlement. *Id.* ¶¶ 16,19. Out of the nearly eighteen million class members, only twenty-four individuals requested to be excluded from the Settlement. Admin. Decl. ¶ 20. Three Class Members objected, but two of the objections are procedurally deficient and none warrant denying final approval.[2] The objections will continue to be addressed by separate filings. *See* S.A. ¶ 94. Given the broad reach of the Notice, and the comprehensive information provided, the requirements of Due Process and Rule 23 are met.

### ii.    The Settlement Class Should be Certified

In its Preliminary Approval Order, the Court undertook a detailed analysis of each of the elements of Rules 23(a) and 23(b)(3) and provisionally certified a Settlement Class of "all persons in the United States who provided their Private Information to Evolve, directly or indirectly, and whose Private Information was included in files affected by the Data Incident." ECF 79, at 5–6, 13–16. For the same reasons the Court granted provisional approval, and for those explained in detail herein, the Court should grant final certification to the Settlement Class.

### a.    The Class meets the requirements of Rule 23(a)

***Numerosity and Ascertainability.*** The first prerequisite is that the "class is so numerous

---

[2] Kroll received objections from class members Benkufsky and Casimir, *see* Admin Decl. ¶ 20 & ECF 86 (Benkufsky Objection), and a third objection from class member Talbott was filed with the Court, *see* ECF 87. The Casimir and Talbott objections are invalid, including because they lack the information required by the Settlement Agreement. Counsel has already responded to a motion to stay the settlement and an "objection" filed by a non-class member, *see* ECF 83 (Allen Objection), 84 (Motion to Stay), 85 (Plaintiffs' Response), which he has no standing to pursue.

that joinder of all members is impracticable." Rule 23(a)(1). "In most cases, a class in excess of forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008). Here, the ultimate number of individuals affected was 17,880,046 people, Admin. Decl. ¶ 7, satisfying the numerosity requirement for purposes of settlement. The Class is also ascertainable, as Defendant knows the identity of each of these Class Members. *See Kinder v. Nw. Bank*, 278 F.R.D. 176, 182 (W.D. Mich. 2011) (class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member").

*Commonality.* Rule 23(a)(2) is satisfied when questions of law or fact are common to the class, the resolution of which will bring a classwide resolution. Fed. R. Civ. P. 23(a)(2). It may be indicated when the claims all "depend upon a common contention," with a single common question sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 56 U.S. 338, 350 (2011). The common contention must be capable of class-wide resolution and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Here, Plaintiffs' claims turn on the adequacy of Defendant's data security measures. Evidence to resolve that claim does not vary among Class Members, and so can be fairly resolved, for purposes of settlement, for the entire Class at once.

*Typicality.* A class representative's claims must be typical of those of other class members. Fed. R. Civ. P. 23(a)(3). Plaintiffs and Class Members satisfy the typicality requirement where their "claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Typicality assesses "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). The claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). The "court must inquire whether the interests of the named plaintiff are aligned with those of the represented group, such that in pursuing his own claims, the named

plaintiff will also advance the interests of the class members.'" *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 623 (E.D. Mich. 2020). Here, Plaintiffs allege that each Settlement Class Member had their Private Information compromised because of the Data Incident and were thus impacted by the same allegedly inadequate data security practices that Plaintiffs alleged harmed the rest of the Class. Thus, Plaintiffs' pursuit of their own claims necessarily advances the interests of the Class, satisfying the typicality requirement.

*Adequacy.* Class representatives must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel . . . which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *UAW*, 497 F.3d at 626. Plaintiffs here have no conflict with other class members, have participated actively, and are represented by attorneys experienced in class actions, including data breach cases. Stranch Decl. ¶ 2. Moreover, Class Counsel regularly engage in consumer privacy cases, have the resources necessary to prosecute this case, and have frequently been appointed lead class counsel in data breach cases and other class actions. Stranch Decl. ¶ 12. Class Counsel have devoted substantial resources to this action: investigating Plaintiffs' claims; obtaining and analyzing Plaintiffs' circumstances; analyzing the scope of the Data Incident; participating in mediation; and, ultimately, negotiating a Settlement that provides meaningful relief for the Class in the face of substantial litigation risks. *Id.* ¶¶ 2, 11. Class Counsel have vigorously prosecuted this case and will continue to do so.

### b. The Class meets the requirements of Rule 23(b)

Plaintiffs must also satisfy one of the three requirements of Rule 23(b) for a court to certify a class. Fed. R. Civ. P. 23(b); *Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013). Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to other available methods for fair and efficient adjudication. Fed. R. Civ. P. 23(b)(3). "A plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus

applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. This requirement considers "the difficulties likely to be encountered in the management of a class action" and issues with individual litigation. *Id.*; *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action[.]"). The proposed Class satisfies the above.

Common questions of law and fact also predominate. Predominance focuses on whether the defendant's alleged liability is common enough to warrant class-wide adjudication. *Amchem*, 521 U.S. at 623. The proposed class must be "sufficiently cohesive to warrant adjudication by representation." *Id.* Though similar to the commonality requirement of Rule 23(a), Rule 23(b)(3) "contains the more stringent requirement that common issues predominate over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016). Predominance is met if a single factual or legal question is "at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Data breach cases present questions of law and fact central to liability that predominate over any individual issues. Defendant's alleged course of conduct was uniform across the Class, so the claims "will prevail or fail in unison." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 859 (6th Cir. 2013). Since classwide determination of this issue will be the same for all, predominance is satisfied. *See In re Hope Coll. Data Sec. Breach Litig.*, 2024 WL 2268559, at *2 (W.D. Mich. May 20, 2024) (holding that predominance was satisfied in connection with granting final approval to another data breach settlement because "common issues of fact and law predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.") (citing Fed. R. Civ. P. 23(b)(3)).

Moreover, a class action is the superior method of fairly, adequately, and efficiently adjudicating this matter. "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407-08 (E.D. Mich. 2012). This is especially true in situations that

"vindicat[e] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617. Adjudicating individual actions here is impracticable; the amount in dispute per person is too small given the complexity of the issues, the costs for document review, technical issues, and experts. Individual damages are insufficient to allow such actions—at least not with the aid of adequate counsel. Such prosecution would delay resolution and may lead to inconsistent rulings. Thus, the Court should certify the Class for the purpose of this Settlement under Rule 23(b)(3), which Defendant does not oppose.

## IV.    The Settlement Should be Granted Final Approval

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008). Rule 23 of the Federal Rules of Civil Procedure was amended in 2018 to front-load the class action settlement process to the preliminary approval stage. *See Hacker v. Elec. Last Mile Sols. Inc.*, 2024 WL 1231257, at *4 (D.N.J. Mar. 21, 2024) ("At the preliminary approval stage, the Court is required to peer ahead, and to ask whether it is 'likely' to ultimately approve the proposed settlement at the end-of-the-line fairness hearing.") (quoting Fed. R. Civ. P. 23(e)(1)(B)).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorneys' fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2);

and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has laid out its own factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631. As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

### a.  The Rule 23(e) Factors Weigh in Favor of Final Approval

The Settlement easily satisfies the Rule 23(e)(2) factors. First, as explained, Plaintiffs and Class Counsel have adequately represented the Class and secured an excellent result. *See supra* §§ 2, 4(a). Plaintiffs, as the putative Class Representatives, have represented the Class admirably. They made themselves available to Class Counsel when necessary, reviewed filings, provided Class Counsel with documents and other evidence, and otherwise helped prosecute this case diligently. Stranch Decl. ¶ 11. Class Counsel are experienced and respected class action litigators with significant experience in data breach cases who negotiated the proposed Settlement on behalf of Plaintiffs. *Id.* ¶ 12. Prior to mediation, the Parties engaged in meaningful informal discovery, exchanging documents and information related to the composition of the Settlement and Defendant's investigation of the Data Incident. *Id.* ¶ 4. Before any Settlement terms were negotiated, Class Counsel conducted extensive and lengthy interviews with Plaintiffs and putative Class Members, analyzed the documents and information produced by Defendant in advance of mediation, and developed a thorough understanding of the complex technical issues underlying the claims and defenses in this matter, as well as the applicable laws. *Id.* ¶ 4. Following the Parties' January 31, 2025, mediation, Class Counsel drafted the proposed Settlement, revised those drafts, and negotiated the details of the final proposed Settlement with Defendant's Counsel. *Id.* ¶ 5-6. This factor weighs in favor of final approval.

Second, the Settlement was negotiated at arms'-length through a highly qualified and renowned mediator, the Honorable Diane Welsh, taking place after the Parties had exchanged

information sufficient to adequately assess the strengths and weaknesses of the case. S.A. ¶¶ 9–11.

The mediation and subsequent negotiations were undoubtedly hard fought and absent of any

collusion. Indeed, the Parties relied on Judge Welsh's assistance to reach the ultimate agreement.

*Id.*; *see Kutzback v. Riviana Foods, Inc.*, 2023 WL 2261417, at *1 (W.D. Tenn. Feb. 27, 2023)

(citing *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008), which held that

"participation of an independent mediator in settlement negotiations virtually insures that the

negotiations were conducted at arm's length and without collusion between the parties"). Third,

the relief provided is adequate when taking into account the factors listed in Rule 23. In

determining whether the benefits provided are adequate, district courts consider "the costs, risks,

and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to

the class, including the method of processing class-member claims"; "the terms of any proposed

award of attorneys' fees, including timing of payment"; and "any agreement required to be

identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(A)–(D).

Here, Plaintiffs and Class Counsel are fully aware of the inherent risks, expenses,

complexity, and delays associated with data security litigation. Stranch Decl. ¶ 10. The proposed

Settlement is a fair and reasonable result that delivers tangible and immediate benefits to all Class

Members. Indeed, the Settlement here compares favorably with similar other data breach

settlement, especially given Defendant's financial and regulatory concerns. Stranch Decl. ¶ 10.

Indeed, each Class Members may make claims for either Cash Payment A – Documented Losses

or Cash Payment B – Flat Cash, but any claims for Cash Payment A – Documented Losses will

require that they submit reasonable supporting documentation. S.A. ¶ 77. Additionally, the flat

cash payment will be adjusted on a *pro rata* basis to exhaust the Settlement Fund. *Id.* ¶ 77(b). The

Settlement also provides for credit monitoring for an additional year, at a value of $110 per Class

Member. *Id.* ¶ 77(c). Moreover, the Settlement includes significant injunctive relief for the Class,

as it requires Evolve to implement and maintain enhanced data security measures designed to

prevent similar data security incidents in the future. *Id.* ¶ 79.

Finally, and as discussed more fully *infra*, Plaintiffs' Service Award and Class Counsel's

attorneys' fees and costs are reasonable and Class Members had a fair opportunity to analyze these provisions in determining whether to opt out or object. Class Counsel has devoted significant time and financial resources to this litigation despite the uncertainties of prevailing on the merits, maintaining class certification, and establishing damages. Class Counsel did not broach the topic of attorneys' fees until after agreeing on all substantive settlement terms with Evolve. Stranch Decl. ¶ 6. Plaintiffs seek attorneys' fees and costs of up to one-third of the Settlement Fund, subject to Court approval and to be paid from the Settlement Fund. S.A. ¶¶ 109, 112. As argued below, this is highly reasonable and in line with typical data breach class action settlements. Indeed, courts in the Sixth Circuit have identified contingent fee requests of this magnitude in other contexts as squarely within the range of awards found to be reasonable as well. *E.g.*, *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *2 (E.D. Tenn. June 30, 2014) (awarding one-third of the common fund which equated to a lodestar multiplier up to 2.5). Thus, this factor likewise weighs in favor of final approval.

Fourth, all Settlement Class Members are treated equally. "A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)). This requirement can be satisfied even when, as here, the Class Members will be entitled to different amounts based on the benefits they select. *Peck v. Air Evac EMS, Inc.*, 2019 WL 3219150, at *7 (E.D. Ky. July 17, 2019) ("While the class members will receive differing amounts, the amount that each class member will receive is based on the actual number of unpaid overtime hours that each person worked.").

Here, all Class Members are eligible to submit Claim Forms for the same Settlement Class Member Benefits if those benefits apply to them. All Class Members may request the *pro rata* cash payment (Cash Payment B – Flat Cash), all Class Members who can provide documentary evidence of any out-of-expenses fairly traceable to the Data Incident may request reimbursement for those expenses (Cash Payment A – Documented Losses) rather than receiving Cash Payment

14

B, and all Class Members may choose to enroll in Credit Monitoring. S.A. ¶¶ 31, 77. Thus, the Settlement ensures that all Class Members are treated equitably in relation to each other and the Rule 23(e) factors are satisfied.

### b.  The Proposed Settlement Satisfies the "Traditional Factors"

#### 1.  No Risk of Fraud or Collusion Exists

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Jones v. Varsity Brands LLC*, 2024 WL 5010412, at *6 (W.D. Tenn. Dec. 6, 2024) (quoting *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008*)*. Furthermore, "'the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.'" *Gokare v. Fed. Express Corp.*, 2013 WL 12094870, at *3 (W.D. Tenn. Nov. 22, 2013) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007)). Here, no fraud or collusion existed in the Parties' settlement negotiations, which were facilitated by a well-qualified mediator. Stranch Decl. ¶ 5. This factor also weighs in favor of final approval.

#### 2.  Prolonged Litigation Would be Costly, Complex, Lengthy

As courts have recognized, data breach litigation is inherently complex. *See*, *e.g.*, *Jackson v. Nationwide Ret. Sols., Inc.*, 2024 WL 958726, at *4 (S.D. Ohio Mar. 5, 2024) ("[T]he technical issues involved in data breach cases are complex."); *In re Wawa, Inc. Data Sec. Litig.*, 2024 WL 1557366, at *20 (E.D. Pa. April 9, 2024) ("Data breach litigation is inherently complex."). Data breach cases require significant technical knowledge and testimony from expensive expert witnesses, who often cost more than $600 per hour. Stranch Decl. ¶ 10. These cases are made even more complex because courts still struggle with how to analyze these claims and often come to inconsistent conclusions. *Id.* Thus, the complexity and expense required to engage in prolonged data breach litigation also weigh in favor of final approval.

#### 3.  The Parties Exchanged Informal Discovery During Mediation

Courts also consider the stage of the litigation and amount of discovery exchanged between the Parties. However, "the absence of formal discovery is not unusual or problematic, so long as

the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Ditsworth v. P & Z Carolina Pizza*, 2021 WL 2941985, at *3 (W.D. Ky. July 13, 2021). Here, the Parties agreed to negotiate resolution of this matter and ultimately agreed to a resolution without the need for expensive and prolonged discovery. Though the Parties have not exchanged formal comprehensive discovery, Class Counsel believes the informal information exchanged between the Parties during and leading up to mediation was more than sufficient to fully understand the relative positions of the Parties, including the strength of the case. Stranch Decl. ¶ 4. Thus, this factor also weighs in favor of final approval.

### 4.  Prolonged Litigation Brings Significant Risks

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011). But courts are "not required 'to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Does 1–2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019) (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).

Plaintiffs and Class Counsel strongly believe that the claims presented in this case are meritorious and that Plaintiffs would prevail at trial. Stranch Decl. ¶ 10. Defendant, though, still maintains that it is not liable. Plaintiffs and Class Counsel understand the risks and delays associated with prolonged litigation and believe the proposed Settlement benefits here outweigh the risks and delays associated with continued litigation. *Id.* Indeed, if Plaintiffs continued with this litigation in lieu of Settlement, Plaintiffs and Class Members would likely face years of delays in getting access to important Settlement Class Member Benefits. Absent Settlement, Plaintiffs face the specter of protracted litigation concerning Defendant's motion to dismiss and objections to class certification, a summary judgment motion, defending expert opinions, trial, and appeals. Moreover, to Class Counsel's knowledge, no data breach case has ever gone to trial. *Id.* Thus, the probability of success at trial has simply never been tested. Nor have the damages a jury may

award. Further, Plaintiffs are aware that Evolve faces heightened regulatory scrutiny and litigation risk in connection with other, unrelated matters, which places Defendant is a potential problematic position and placing additional risk on the class that it could receive nothing.

Thus, although Plaintiffs and Class Counsel believe in the strength of this case, they understand that these issues would cause significant delay, thus making settlement even more reasonable. Thus, this factor weighs in favor of final approval.

### 5. Class Counsel and the Named Plaintiffs Support the Settlement

"'The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.'" *Green v. v. Platinum Rests. Mid-America LLC*, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) (quoting *UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008)). Here, "the experienced attorneys on each side, after assessing the relative risks and benefits of litigation, believe that the settlement is fair and reasonable." *Id.*; Stranch Decl. ¶¶ 7, 9.

### 6. The Reaction of Absent Class Members is Overwhelmingly Positive

The reaction of absent Class Members further supports final approval. In most class settlements, a small number of opt outs and objections "are to be expected" and do not impact a settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected). Here, twenty-four Class Members have requested to opt out, and only two Class Members have filed formal objections. Admin. Decl. ¶ 20. This factor, therefore, plainly weighs in favor of final approval. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."). Indeed, given the size of the Class here, the fact that only twenty-four Class Members have requested exclusion is an indication of the settlement's fairness. *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 600 (E.D. Mich. 2006) (collecting cases); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential

class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement.").

### 7. The Settlement Serves the Public Interest

Courts have often espoused "a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Coleman v. Amazon.com, Inc.*, 2025 WL 582495, at *6 (W.D. Tenn. Feb. 21, 2025) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530). Further, when individual class members seek relatively low damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen*, 417 U.S. at 161. Society undoubtedly has a strong interest in incentivizing attorneys to bring complex litigation that is necessary to protect the privacy of individuals' most personal information—especially given that such privacy violations would likely go unredressed in the absence of a class action. Thus, the strong public interest in favor of settlement supports final approval.

## V. The Court should Affirm Its Appointments of Class Counsel and Class Representatives

In the Court's Preliminary Approval Order, the Court, for settlement purposes only, preliminarily appointed Plaintiffs as Class Representatives pursuant to Rule 23(e)(2)(A), and J. Gerard Stranch, IV as Class Counsel; Gary Klinger, Linda Nussbaum, Jeff Ostrow, James Pizzirusso, Scott Poynter, and Lynn Toops as Members of the Executive Committee; and Frank Watson of Watson Burns, PLLC as Liaison Counsel for the Plaintiffs' Settlement Class pursuant to Rule 23(g)(1). Because nothing has changed regarding the Court's appointment of Class Representatives and Class Counsel, the Court should affirm its appointments. For efficiency, Plaintiffs incorporate by reference their Class Counsel and Class Representatives arguments from the Motion for Preliminary Approval. [ECF No. 70]

## VI. The Court Should Grant Plaintiffs' Request for Attorneys' Fees and Expenses

The Court should also approve Plaintiffs' request for attorneys' fees and unreimbursed

expenses. The percentage-of-the-benefits method is the most appropriate and efficient way of awarding fees, and the standard 33% market rate is appropriate here. Indeed, Defendant agreed not to oppose Plaintiffs' request for up to a third of the Settlement. S.A. ¶ 112. Thus, the Court should approve payment of $3,952,753.33 in attorneys' fees, which is inclusive of all unreimbursed litigation expenses and costs and represents 33% of the $11,858,259.98 Settlement.

Rule 23(h) expressly authorizes courts in class action settlements to award "reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As the U.S. Supreme Court has observed, under the law, "lawyer[s] who recover[ ] a common fund . . . [are] entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). A district court has discretion to use either the percentage of the benefit method or the lodestar method to calculate attorneys' fees. *Gashko v. Global Fitness Holdings, LLC*, 822 F.3d 269, 278 (6th Cir. 2016). The "trend" has been towards using the percentage of the benefit method in awarding attorneys' fees. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 515 (6th Cir. 1993). This method "more accurately reflects the results achieved." *Id.* at 516. It has "a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Id.* By contrast, "the lodestar method has been criticized for being too time-consuming of scarce judicial resources." *Id.* (citing *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269–70 (D.C. Cir. 1993); *Court Awarded Attorneys' Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237, 250 (1985)). "With the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement." *Id.*

"In calculating a percentage fee award in a class action involving a settlement fund, the Supreme Court has recognized 'that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole,' even if part of the fund reverts to the defendant." *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 386 (E.D. Pa. 2019) (quoting *Boeing*, 444 U.S. at

19

478); *see also Boeing*, 444 U.S. at 480 (holding that the class members' "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel"). "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000). "[C]ourts within this circuit have found one-third common fund attorneys' fee awards to be reasonable" in complex litigation. *Ware v. CKF Enters., Inc.*, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020).[3]

In data breach cases in particular, courts have found that an award of one-third "is customary and typical of like awards." *All. Ophthalmology, PLLC v. ECL Grp.*, LLC, 2024 WL 3203226, at *15 (M.D.N.C. June 27, 2024) (one-third fee in data breach settlement) (citing *Lamie v. LendingTree, LLC*, 2024 WL 811519, at *2 (W.D.N.C. Feb. 27, 2024) (same); *Thomsen v. Morely Cos.*, 2023 WL 3437802, at *2 (E.D. Mich. May 12, 2023) (awarding 33% and finding that amount to be "presumptively reasonable"); *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *8 (E.D. Wis. Mar. 22, 2023) (overruling objector and awarding fee of one-third of gross settlement fund and 41% of net settlement fund); *In re Novant Health, Inc.*, 2024 WL 3028443, at *9 (M.D.N.C. June 17, 2024) (awarding class counsel fees of one-third of $6.6 million in data privacy settlement); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) (approving one-third fee of over $29 million and noting that amount "is typical in other data privacy settlements"), *appeal dismissed sub nom. In re Tiktok Inc., Consumer Priv. Litig.*, 2022

---

[3] *See also Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 2020 WL 3053468, at *1 (M.D. Tenn. May 29, 2020) (awarding a one-third fee of $40 million from a $120 million settlement and noting that a one-third fee "is certainly within the range often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Cassell v. Vanderbilt Univ.*, 2019 WL 13160853, at *1 (M.D. Tenn. Oct. 22, 2019) (awarding one-third fee and noting that amount is "common"); *Fusion Elite All Stars v. Varsity Brands, LLC*, 2023 WL 6466398, at *6 (W.D. Tenn. Oct. 4, 2023) (awarding fee of one-third of $43.5 million settlement) (citing *In re Skelaxin (Metaxalon) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third [of the settlement recovery] is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013) (awarding one-third fee from $158.6 million settlement)); *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) (finding that 33% "is typical" for attorneys' fees).

WL 19079999 (7th Cir. Oct. 12, 2022).

Moreover, the six factors often considered weigh in favor of the reasonableness of Plaintiffs' request here:

> (1) the value of the benefit rendered to the plaintiff class[]; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996). A court need not evaluate each factor, and, when a percentage fee is sought, attorney time is unnecessary. *See Ware*, 2020 WL 2441415, at *16 (noting that class counsel did not provide time information but finding a one-third fee reasonable where the other factors favored that amount).

A fee of one-third of the common fund is appropriate here. First, the value of the benefit to the Settlement Class is significant: more than $11.8 million, which will be used to provide cash payments and credit monitoring to the Settlement Class, as well as valuable business practice changes. Class Counsel achieved this substantial amount while avoiding the risk and delay for the Class that would come with continued litigation. Second, Class Counsel took this litigation on a purely contingent fee basis, meaning they risked never recovering any fee for their time unless the litigation was successful. *See e.g., Fulton-Green v. Accolade, Inc*., 2019 WL 4677954, at *13 (E.D. Pa. Sept. 24, 2019) ("Class Counsel invested considerable resources into this case with no guarantee that they would recover those costs given that they were retained on a contingency fee basis. This factor again weighs in favor of determining that the fee is reasonable."). Third, society has a stake in rewarding attorneys who produce benefits in data breach cases because such suits serve not only to compensate victims but also to deter allegedly lax data security practices by other entities and to encourage entities to spend adequately on data security to prevent harm. Fourth, "courts have recognized that data breach class action cases are 'particularly risky, expensive, and complex.'" *Beasley v. TTEC Servs. Corp.*, 2024 WL 710411, at *5 (D. Colo. Feb. 21, 2024)

(quoting *Gordon v. Chipotle Mexican Grill, Inc.*, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) (collecting cases); *see also In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) (collecting cases).

Further, counsel on both sides of this case are highly skilled in class actions, in general, and data breach class action, in particular. Stranch Decl. ¶ 12 & Ex. A. Class Counsel have thus far received no timely objections to the requested fee. Thus, the relevant factors support approving a payment from the Common Fund of $3,952,753.33 (33%).[4] Thus, a third of the common fund the Class Counsel has earned for Class Members is appropriate here.

## VII.    The Court Should Grant Class Representatives' Service Awards

Plaintiffs also move for a $2,500 Service Award to each Class Representative for their efforts in this Action on behalf of the Settlement Class. "'[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *In re AME Church*, 2025 WL 2396514, at *12 (W.D. Tenn. Aug. 18, 2025) (collecting cases) (awarding $20,000 service awards). Courts consider "(1) the action taken by the Class Representatives to protect the interests of the Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation." *In re Family Dollar Stores, Inc.*, 2024 U.S. Dist. LEXIS 82088, at *30-31 (W.D. Tenn. May 6, 2024) ($5,000 and $2,000 service awards).

---

[4] *See Hutchinson v. Fast Pace Med. Clinic PLLC*, 2024 WL 4634055, at *2 (M.D. Tenn. Oct. 30, 2024), *appeal dismissed*, 2025 WL 1446609 (6th Cir. May 15, 2025) ("With regard to attorneys' fees, the Court concludes that the proper approach to awarding fees under the percentage-of-the-fund method is to award fees based on a percentage of the entire common fund obtained by Class Counsel, not the amount that Settlement Class Members choose to claim."); *In re AME Church Employee Ret. Fund Litig.*, 2025 WL 2396514, at *10 (W.D. Tenn. Aug. 18, 2025) ("A percentage-of-the-fund award based on the entire fund is proper under United States Supreme Court and Sixth Circuit law . . . [i]n *Boeing Co. v. Van Gemert*, [444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980)] the Supreme Court settled this question by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed."); *In Re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) ("[T]he trend in the Sixth Circuit is towards adoption of a percentage of the fund method in common fund cases.") (internal quotation omitted).

Plaintiffs, as Class Representatives, were essential in ensuring this Action was brought, protecting the Settlement Class Members and obtaining substantial benefits for them, while assuming substantial direct and indirect financial risks, and spending their time and effort to achieve that result. Stranch Decl. ¶ 11. They initiated and remained in contact with Class Counsel, considered and reviewed the pleadings in this case and the Agreement, supervised and monitored Class Counsel's work, provided background documents, and followed the litigation's progress to ensure the Settlement Class received the best recovery possible, given the facts and risks of the Action. *Id*. Balancing the Class Representatives' services against the modest $2,500.00 requested for each (for a total of $35,000.00), the Service Awards requested are reasonable.

## VIII.  Conclusion

For these reasons, Plaintiffs respectfully requests that the Court grant final approval to the Class Settlement Agreement. Moreover, Plaintiffs respectfully moves the Court for an order (1) affirming its appointment of Class Counsel, (2) affirming its appointment of Class Representatives, (3) affirming its conditional certification of the Class for the purposes of Settlement only, (4) holding that the notice program complied with due process requirements, and (5) holding that the Settlement is fair, reasonable, and adequate.

Dated: September 30, 2025                    Respectfully Submitted,

                                             */s/ J. Gerard Stranch, IV*
                                             J. Gerard Stranch, IV (BPR 23045)
                                             Grayson Wells (BPR 039658)
                                             **STRANCH, JENNINGS & GARVEY, PLLC**
                                             The Freedom Center
                                             223 Rosa L. Parks Avenue, Suite 200
                                             Nashville, TN 37203
                                             Tel: (615) 254-8801
                                             gstranch@stranchlaw.com
                                             gwells@stranchlaw.com

                                             *Lead Class Counsel*

                                             Gary M. Klinger
                                             **MILBERG COLEMAN BRYSON**

**GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

Lynn A. Toops
Amina Thomas
**COHEN & MALAD LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

Jeff Ostrow
**KOPELOWITZ OSTROW, P.A.**
1 W. Las Olas Boulevard, Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

Linda Nussbaum
**NUSSBAUM LAW GROUP P.C.**
1133 Avenues of the Americas, 31st Floor
New York, NY 10036
Tel: (917) 438-9102
lnussbaum@nussbaumpc.com

James J. Pizzirusso
**HAUSFELD LLP**
888 16th Street N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
jpizzirusso@hausfeld.com

Scott Poynter
**POYNTER LAW GROUP**
4924 Kavanaugh Boulevard
Little Rock, AR 72207
Tel: (501) 812-3943
scott@poynterlawgroup.com

*Members of the Class Counsel Executive
Committee*

Frank L. Watson, III
**WATSON BURNS, PLLC**
253 Adams Avenue
Memphis, TN 38104
Tel: (901) 529-7996
fwatson@watsonburns.com

*Class Liaison Counsel*

***Attorneys for Plaintiff and the Putative Class***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing Memorandum in Support of Plaintiffs' Unopposed Motion for Final Approval, Fees, Expenses, and Service Awards was electronically filed on September 30, 2025, using the Court's Electronic Filing System, which will send a Notice of Electronic Filing to counsel in the CM/ECF system.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 23045)