IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN RE: EVOLVE BANK & TRUST ) | |
| CUSTOMER DATA SECURITY ) | 2:24-md-03127-SHL-cgc |
| LITIGATION ) | |

**ORDER DENYING MOTION FOR IMMEDIATE DECLARATORY RELIEF AND FOR INJUNCTIVE RELIEF TO STAY FINAL APPROVAL OF SETTLEMENT AND EMERGENCY MOTION FOR INTERVENTION, INJUNCTIVE RELIEF, AND INVESTIGATION OF FRAUD ON THE COURT**

Before the Court are two motions filed by Justin R. Allen, who is proceeding pro se. The first, filed September 4, 2025, is styled as a Motion for Immediate Declaratory Relief and for Injunctive Relief to Stay Final Approval of Settlement (the "Original Motion"). (ECF No. 84.) Plaintiffs responded on September 18. (ECF No. 85.) Allen styled his second Motion as Notice of Change of Address, Certification, and Emergency Motion for Intervention, Injunctive Relief, and Investigation of Fraud on the Court (the "Second Motion"). (ECF No. 90.) On October 24, Plaintiffs responded to the Second Motion with their Supplemental Response to Objector Justin Allen. (ECF No. 91.) For the reasons explained below, the motions are **DENIED**.

### BACKGROUND

Evolve is an Arkansas-state chartered bank that partners with financial technology ("FinTech") companies to offer banking services to their customers. (ECF No. 70-1 at PageID 578.)[1] In February and May 2024, cybercriminals gained unauthorized access to Evolve's information systems and accessed and exfiltrated private information, including that belonging to

---

[1] The facts outlined herein are from the proposed Settlement Agreement previously submitted by the Parties. (See ECF Nos. 69-1 & 70-1.) Capitalized terms not otherwise defined here shall have the meaning defined in the proposed Settlement Agreement.

Evolve's personal banking and FinTech customers (the "Data Incident"). (Id.)

Following the announcement of the Data Incident, multiple putative class action lawsuits were filed against Evolve and Evolve FinTechs, alleging that Evolve failed to properly protect the Private Information in accordance with its duties, had inadequate data security, was unjustly enriched by the use of the Private Information, and improperly or inadequately notified potentially impacted individuals. (Id.)

On or about July 1, 2024, Evolve began notifying individuals that their private information may have been compromised in the Data Incident. (Id. at PageID 579.) On October 4, 2024, the Joint Panel on Multidistrict Litigation ("JPML") created an MDL docket related to the Data Incident, and transferred twenty-two putative class action lawsuits to the undersigned for coordinated or consolidated pre-trial proceedings. (Id.) Between October 16 and November 13, 2024, the JPML conditionally transferred twelve additional putative class actions related to the Data Incident. (Id.) On November 26, 2024, the Court appointed J. Gerard Stranch IV of Stranch, Jennings & Garvey, PLLC as MDL Lead Counsel and authorized Stranch to litigate all pretrial proceedings and to conduct settlement negotiations on behalf of Plaintiffs and absent putative class members that now compromise the Settlement Class. (ECF No. 46.)

On January 21, 2025, MDL Lead Counsel filed a Consolidated Class Action Complaint alleging claims for: negligence and negligence per se, breach of third-party beneficiary contract, unjust enrichment, as well as claims under California's Unfair Competition Law, California Consumer Records Act, the California Consumer Privacy Act, and for injunctive relief on behalf of a California subclass. (ECF No. 53.)

Following the appointment of MDL Lead Counsel, in an effort to conserve resources for the Settlement Class as opposed to spending time and money litigating the Action, counsel for

2

the Parties explored the early resolution of the case, which culminated in the Parties' participating in a mediation session conducted on January 31, 2025, with the Honorable Diane M. Welsh, a retired federal magistrate judge now with Judicial Arbitration and Mediation Services in Philadelphia, Pennsylvania. (ECF No. 70-1 at PageID 579–80.) In preparation for and following the mediation, the Parties met on numerous occasions and exchanged extensive confidential information related to the Data Incident, which allowed the Parties to assess the case and meaningfully engage in arm's-length settlement discussions. (Id. at PageID 580.)

The January mediation was successful, and the Parties reached an agreement regarding the material terms of a classwide settlement that resolved all the claims against Defendant in the case. (Id.) On February 25, 2025, the Court continued a Status Conference in the case, following the Parties' filing of a Notice of Settlement and Request for Stay Pending Settlement. (ECF No. 60.) Thereafter, the Parties negotiated the proposed Settlement Agreement and on April 1, filed their Unopposed Motion for Preliminary Approval. (ECF No. 69.) After conducting a hearing on the motion (ECF No. 76), the Court granted it (ECF No. 79).

That Order explained the Settlement Agreement's key terms, conditionally certified the proposed class, ordered Kroll, the settlement administrator, to direct and issue notice, appointed class representatives and counsel, and adopted the proposed schedule. (See ECF No. 79.) The schedule included, among other things, the date for notice, the opt-out and objection deadlines, and the deadline for motion in support of final approval of settlement. (Id. at PageID 857.) The dates of several of those deadlines were triggered by the Final Settlement Fairness Hearing, which the Court scheduled for November 14, 2025. (Id. at PageID 860.) The Court explained that, at the hearing, it would consider whether the proposed Settlement on the terms and conditions provided in the proposed Settlement Agreement is fair, reasonable, and adequate, and

3

should be approved by the Court; the request for attorneys' fees and unreimbursed litigation costs and expenses should be approved; the request for service awards to the Class Representatives should be approved; and to rule on such other matters as the Court may deem appropriate. (Id.) Pursuant to the schedule, Plaintiffs filed their Unopposed Motion for Final Approval, Fees, Expenses, and Service Awards on September 30. (ECF No. 88.)

Before they did that, Allen filed the Original Motion.[2] In it, Allen alleged that he was "a victim of the data security incident that is the subject of this litigation," as "[h]is personal and financial information was compromised, making him a member of the putative class." (ECF No. 84 at PageID 868.) Allen asserted that, in spite of being a member of the putative class, he received no direct notice of the lawsuit or the proposed settlement, and "was not notified via mail, email, or any other method." (Id.) According to Allen, he nevertheless "discovered the existence of this lawsuit and the proposed settlement entirely on his own through independent means." (Id.) He then says he contacted the "Jennings Law Office, who are listed as representing the class victims," but was told by the firm that they could not communicate with him in an effort to "keep costs low." (Id.)

In the Original Motion, Allen asserts that the insufficient notice he described violates Due Process and Federal Rule of Civil Procedure 23. (Id. at PageID 869.) He asserts that the

---

[2] The Original Motion was received by the Clerk of Court through the mail on September 4, and docketed the same day. The Clerk of Court also received a letter from Allen the same day, in which he lodged his formal objections to the settlement. (ECF No. 83.) In that letter, he voiced many of the same concerns outlined in the Original Motion, and also asserted that his voice and others were being "silenced by unscrupulous class action suits." (Id. at PageID 865.) Beyond the issues he identified in his motion, he wrote that "I also have reason to believe I am experiencing persistent computer and network interference specifically designed to prevent my communications with this Court. This interference, I believe, is connected to a much larger fraudulent scheme involving a fraudulent power of attorney created to gain illicit access to assets related to Elvis Presley and Graceland." (Id. at PageID 865–66.)

4

proposed settlement was not fair based on the fact that the class was not properly constituted and notified, and, by refusing to communicate with him, class counsel failed to adequately represent the class, consistent with its obligations under Rule 23. (Id. at PageID 869–70.) Allen sought, among other things, declaratory relief that the settlement notice process was constitutionally and procedurally deficient, along with an injunction staying the final approval hearing and halting all proceedings related to the finalization of the settlement. (Id. at PageID 870.)

In their response to the Original Motion, Plaintiffs explained that Allen was not a class member, as "the list of class members Defendant provided to Kroll did not contain Mr. Allen's name. Nor did it include anyone living at his address. Nor did it include his email address." (ECF No. 85 at PageID 872.) The response included the Declaration of Frank Ballard of Kroll Settlement Administration LLC in Connection with Pro Se Motion of Justin R. Allen, wherein Ballard stated that he was "unable to locate any record for Mr. Allen in the Class List based on the" information provided in the Original Motion, which included Allen's name, mailing address, and email. (ECF No. 85-1.)

As to Allen's assertions that counsel refused to talk to him to save on costs, Interim Class Counsel noted that he does not work for the "Jennings Law Firm," which is an "unrelated entity who may have signed clients but is not the appointed Interim Class Counsel." (Id. at PageID 873.) Moreover, counsel attached a declaration to his response, indicating that he interviewed all of his firm's "employees who operate the reception desk or otherwise field incoming calls, and none are aware of any calls from Mr. Allen to our offices," and that, in any event, his "staff is trained to refer class members to the settlement administrator for questions regarding how to file their claims and to the assigned attorney for any more in-depth questions." (Id.)

5

Allen's Second Motion seeks much of the same relief he seeks in his first filing, although he also sought relief in his second filing on behalf of Lisa Allen, whom he identified in his earlier letter objecting to the settlement as his mother. (See ECF No. 83 at PageID 866.) He asserts that he and his mother are class members, but neither "received personal notice of this class action or its proposed settlement via U.S. Mail, electronic mail, or any other means prescribed by Federal Rule of Civil Procedure 23 and constitutional due process." (ECF No. 90 at PageID 1010.) Allen asserts that, because he was deprived of official notice, he and his mother were "compelled to retain and pay a private investigation firm to confirm their status." (ECF No. 1010.) According to Allen, that "investigation successfully located their[3] Class Member ID." (Id.) (emphasis added). Allen attached to the Second Motion what appears to be an email from Kroll, sent July 14, 2025, that includes notice of the lawsuit, his class member ID, and instructions on how to submit a claim, among other things. (See ECF No. 90-1.) In the Second Motion, Allen also "request[s] intervention under Federal Rule of Civil Procedure 24," as he and his mother's interests "are being impaired by the alleged failure of Class Counsel and the Settlement Administrator to properly identify and notify us." (ECF No. 90 at PageID 1008.)

Ultimately, in his second filing, Allen seeks the following relief: the right for he and his mother to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2); an injunction staying all further actions related to the settlement, including the final approval hearing; an evidentiary

---

[3] It is unclear whether Allen's mother is a class member in her own right, and, although the Second Motion implies that both he and his mother "were issued Mastercards by Evolve Bank & Trust," and she appears to have signed the Second Motion, Allen frequently conflates their interests. While it is unclear whether Lisa Allen is a class member and whether and when she received notice, of course, as a pro se litigant, Allen can bring his own claims, but not the claims of anyone else. See Hymas v. United States Dep't of State, No. 3:23-CV-00336-DCLC-JEM, 2025 WL 1136067, at *2 (E.D. Tenn. Apr. 17, 2025), reconsideration denied, 2025 WL 1347319 (E.D. Tenn. May 8, 2025)).

hearing to address the due process violations and fraud violations outlined in his second filing; mandating that the Settlement Administrator and Class Counsel produce documentation and methodology behind the creation of the class list and methodology behind notice; a full investigation into their allegations of fraud on the court associated with Kroll's assertion that he was not, in fact, a class member; and an award of $2.5 million in damages to he and his mother. (ECF No. 90 at PageID 1012.)

In their response, Plaintiffs assert that, contrary to Allen's contentions and consistent with the document he attached to the second filing, he had notice of the lawsuit. (ECF No. 91 at PageID 1021–23.) Moreover, Plaintiffs contend that Ballard's declaration was not, in fact, false, because Kroll used reasonable efforts to identify whether Allen was a class member using the information Allen himself provided, and that information did not reveal that Allen was a class member.[4] (Id. at PageID 1022–23.) Plaintiffs also assert that, to the extent Allen seeks to intervene, he has no basis to do so, as his interests have been protected through the objection he filed to the proposed settlement. (Id. at PageID 1024.) Finally, Plaintiffs acknowledge that, consistent with Allen's contention in his Original Motion, Allen produced a tape recording of a telephone call that would appear to support, at least in broad strokes, Allen's earlier contentions. But, according to Plaintiffs, in that recording

> a receptionist did say something similar to what Mr. Allen contends, but the way Mr. Allen took it was out of context. The purpose of the statement was to convey that Kroll Settlement Administration was hired to provide notice to the Class, to collect and process claims, and to answer Class Member questions. Although Class Counsel has no problem speaking with Class Members for remaining questions—and does so daily—the point was simply that Kroll should be the first avenue for Class Members to get

---

[4] The correspondence Kroll sent to Allen was under the name "Allen Justin" and was sent to the email address newlifedirection293@gmail.com. (ECF No. 90-1.) That email is different than the one Allen provided in his Original Motion, and his first and last name were inverted in the email and, presumably, in the Class List Kroll had compiled.

>   answers to their questions because that is a big part of what Kroll was hired
>   to do.

(Id. at PageID 1023 n.3.)

## ANALYSIS

The basis for the bulk of the claims for which Allen seeks relief—and the corresponding remedies that he seeks—is his contention that he was not provided notice of the lawsuit, which "demonstrates that the notice program implemented in this case was constitutionally and procedurally defective." (ECF No. 84.) The problem with that assertion, however, is that, based on Allen's own filings, he did, in fact, have notice, and had that notice in July 2025, a month before he filed the Original Motion in which he asserted that he did not.

Allen asserted that he "was compelled to hire a private investigation firm to locate the class member ID." (ECF No. 90 at PageID 1008.) However, apparently the private investigation firm located the class member ID in an email that Kroll sent to a different email of Allen's. (See ECF No. 90-1 at PageID 1014.) As Plaintiffs assert, "[r]ather than not receiving proper notice, the problem instead appears to be simply that Mr. Allen needed help finding the notice in his email inbox." (ECF No. 91 at PageID 1022.) In other words, Allen's complaint that he was not provided notice is contradicted by the evidence that he himself produced that demonstrates otherwise.

Ultimately, "[t]o comply with the Due Process Clause and federal procedural rules, notice must be given in a manner that is reasonably calculated to reach and be understood by any named or unnamed class member who may be bound by the settlement." In Re E. Palestine Train Derailment, — F.4th —, No. 24-3852, 2025 WL 3089606, at *5 (6th Cir. Nov. 5, 2025) (citing Fed. R. Civ. P. 23(c)(2)(B), (e)(1); U.S. Const. amend. V; Fidel v. Farley, 534 F.3d 508, 515 (6th Cir. 2008)); see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997) ("To

alert class members to their right to 'opt out' of a (b)(3) class, Rule 23 instructs the court to 'direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'")

Not only did Allen receive notice through his email, as Plaintiffs pointed out, Kroll also conducted an online media campaign including banner ads, social media ads, and search engine ads, between September 1 and October 15, 2025, to help facilitate notice. (ECF No. 91 at PageID 1023.)[5] Accordingly, Allen's right to Due Process has not been violated, and he is not entitled to any relief sought based on the alleged "utter failure of notice."

Nor is Allen entitled to permissive intervention pursuant to Federal Rule of Civil Procedure 24(a)(2). Under that provision,

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Allen asserts that, absent allowing he and mother to intervene, "a settlement to which they were not given proper notice will be approved, extinguishing their claims via *res judicata*." (ECF No. 90 at PageID 1011.)

As explained above, not only did Allen receive adequate notice, but contemporaneously with the filing of the Original Motion, Allen exercised his right to object to the settlement

---

[5] Allen asserts that he and his mother "only became aware of the litigation upon receiving a 'Motion of Objection to Stay and Injunction' filed by another party. This was the first and only communication they received referencing the settlement." (ECF No. 90 at PageID 1010.) Even setting aside the email notice that Allen appears to have overlooked, he must have received notice of the lawsuit at some point prior to the filing of his original Motion on September 4, 2025, because he was aware of the motion by the third party, although the circumstances surrounding his receipt of the third party's filing are unclear.

proposal, as he is entitled to do under Federal Rule of Civil Procedure 23(e)(5).  (See ECF No. 83.)  As Plaintiffs point out, "Allen does not need to intervene in order to object and assert his arguments."  (ECF No. 91 at PageID 1024.)  Where, as here, "a proposed intervenor has 'other adequate means of asserting her rights,'" such as opting out or objecting to a settlement, denial of permissive intervention is warranted.  Albright v. Ascension Michigan, No. 1:22-CV-638, 2024 WL 4113312, at *5 (W.D. Mich. Aug. 1, 2024), appeal dismissed, No. 24-1750, 2025 WL 711542 (6th Cir. Feb. 18, 2025) (quoting Head v. Jellico Hous. Auth., 870 F.2d 1117, 1124 (6th Cir. 1989)).  Here, Allen has exercised his right to object, which provided an adequate means of asserting his rights in this case.  For that reason, to the extent he seeks to intervention in the Second Motion pursuant to Rule 24, that request is **DENIED**.

Finally, to the extent that Allen asserts that Plaintiffs have conducted a fraud on the Court through the Settlement Administrator's submission of a certification that is demonstrably false, Allen's position is not well taken.  As noted above, the declaration submitted in response to Allen's Original Motion explained that Kroll was unable to locate any record for Allen in the Class List based on the information Allen provided in his motion, which included his name, mailing address, and email.  (ECF No. 85-1 at PageID 878.)  The fact that Allen's first and last name were inverted in the Class List, along with the fact that his email address had changed from the one in the Class List, do not provide support for Allen's contention that Plaintiffs were perpetrating a fraud on the Court.

Consistent with the declaration, Kroll searched the information it had consistent with the information that Allen provided it, and he did not surface as a class member.  If Kroll did search for Allen's inverted name and suspected that "Allen Justin" was, in fact, Justin Allen, that would have confirmed to the settlement administrator that Allen did, in fact, have notice in July 2025.

10

The Settlement Administrator had every incentive to do so.  It defies logic to suggest that Plaintiffs misrepresented to the Court that Allen was not a class member when it would have behooved them to acknowledge that he was and, in fact, received notice of the lawsuit.[6]

Consistent with the foregoing, Allen's Motion for Immediate Declaratory Relief and for Injunctive Relief to Stay Final Approval of Settlement, and his Motion as Notice of Change of Address, Certification, and Emergency Motion for Intervention, Injunctive Relief, and Investigation of Fraud on the Court are **DENIED**.

**IT IS SO ORDERED,** this 13th day of November, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] Although Plaintiffs now acknowledge that a phone call between Allen and the office of Plaintiffs' counsel did occur, and that a recording of the call exists, the recording is not before the Court.  The existence of the call and its recording do not change the analysis herein, but Plaintiffs should nevertheless be prepared to address that issue at the Final Approval Hearing on November 14, 2025.